THOMAS PETER CARNES for the use of EPHRAIM OLDEN *against* NATHAN FIELD and JOSHUA HARLAN.

One having a good defence against his bond, though ignorant of the same, promises to pay it, in confidence whereof another obtains an assignment, the obligor is concluded thereby.

THIS action was tried at the last sittings for Philadelphia county, before Smith and Breckenridge, Justices, when a verdict was obtained by the plaintiff.

A motion was now made for a rule to show cause why a new trial should not be granted.

The facts appeared as follows: The parties contracted together for a large quantity of Georgia lands; and Carnes, by two deeds, dated 18th December, 1794, conveyed to the defendants fifteen tracts of land in Franklin county, in the state of Georgia, by certain meets and

bounds, containing in the whole 20,498 acres, in consideration of 2562*l*. For this sum they had given their bonds dated the following day, and had paid 1908*l*. 18*s*. 11*d*. thereon. The bond on which the suit was brought, formed part of the balance due, and was conditioned for the payment of 282*l*. 5*s*. 4½*d*. on the 19th December, 1796. It was informally assigned by Carnes to Joshua B. Bond, on the 25th December 1794, by him to Gardner and Olden, without further risk, on the 17th January 1795, and by them to Ephraim Olden, in December following.

ⱡ In May 1799, the defendants sent a person to view the lands conveyed to them, who proved, that 6948 acres part thereof was over the Indian line, and 4495 acres other part were not to be found. Consequently, 11,443 acres were deficient of the whole quantity, and the defendants had paid for more lands than they had really vested in them.

But it also appeared in evidence, that the obligor on the day succeeding the execution of the obligations, had applied to Joshua B. Bond to receive them in payment of a quantity of Russia sheetings, which the latter declined, until he consulted the obligors, and in consequence thereof, on the 25th December, enquired of Field respecting the obligations, whether they were genuine and would be duly discharged. Field appeared angry at the questions, and observed that the signatures were theirs, and would not have been subscribed thereto, if there had not been a valuable consideration therefor, adding, that the obligations would be paid when they became due. Harlan made the same answers, and though he declined giving notes in exchange for the bonds, said, the enquirer need not be afraid of taking them, as they would be paid when they came to maturity. Hereupon Bond accepted an assignment of all the obligations, and gave Carnes money and merchandise to the full amount, discounting common interest only.

The counsel for the defendant insisted, that the justices who had directed a recovery under the circumstances, had misdirected the jury. It was evident that the defendants had only received titles for 9055 acres, instead of 20,498 acres of land. They had paid for much more land than they had got, and the assignee stands on the same footing as the original obligee. Indeed here the suit is brought in the name of the latter, on account of the informality of the assignment.

The conversation relied on, passed within six days after the bonds were given. In that period, it was utterly impossible for the defendants to ascertain the real situation, or title of the lands. The promise to pay when the obligations fell due, was founded on a mistaken apprehension of the defendants' having received a good title.

Yeates J. In a late cause, at Reading, (Ludwig assignee v. Croll,) my brother Smith and myself adopted a distinction, between a promise to pay a bond obtained without good consideration made to an assignee after the assignment, and such a promise made previous to the assignment, and in confidence whereof in the latter case, the party took the same. The assignee in the first instance, was held subject to the same equity as the assignor. What more prudential step can a person who meditates the obtaining of an assignment take, (1 Wms. 497, 2 Equ. Ca. Ab. 87,) than by calling on the party who had sealed and delivered the specialty, and who must necessarily be conusant of all the circumstances, which gave birth to the transaction ? Shall the latter by his misapprehension at the moment, violate the principles of good faith with the former ? Surely not.

*Per tot. cur.* The general rule of our law, certainly is, that mistake, fraud or want of consideration may be given in evidence, even against the honest assignee of a specialty. But where the obligor represents the money thereon as justly due, to a person desirous of taking the assignment, and engages to pay the same, in faith and confidence whereof the assignment is procured, the former takes on himself the risk of the adequacy of the consideration, and the fairness of the original transaction, and relinquishes any objections he might otherwise have on those grounds. Such conduct is virtually a new contract, and forms an exception to the general rule.

Motion denied.

Mr. RAWLE, *pro quer.* Mr. J. B. M'KEAN, *pro def.*