Mr. Chief Justice Shahkev
delivered the opinion of the court.
The complainant filed his bill to enjoin proceedings át law, arid the injunction being dissolved by the Chancellor, this'appeal was taken. It appears that the notes on which the suits at law were brought, were given for ten sections of land, of which Davis, the vendor, represented himself as-the rightful owner, aB'assignee of certain Choctaw Indians, who derived title under the 14th Article of the Treaty óf Dancing Rabbit Creek. Confiding in these representations, the complainant ¿nade and delivered the notes, amounting to nine thousand six hundred and sixty-nine dollars, and took from the vendor a bond in the penalty of sixty thousand dollars conditioned to make title to the complainant so soon as it should be received by the obligor. It is alledged'that Davis had no right or title whatever, and that his representations were false and fraudulent.' The charge of misrepresentation and fraud is sustained by the’proof. The answers, however, set up'and rely on new and independent facts which transpired between the complainant, and the assignee of the notes, on which the Respondents insist they have a right to recover at law, although the consideration may have failed as between the véndor.aiid vendee. Shortly after the notes were made, they were transferred by Davis, the payee, to one Pierce, for a valuable consideration, in the course of *721 trade. Before Pierce would purchase the notes, he went to the complainant to know whether he would be safe in doing so. He was answered that the notes were good and no difficulty about them, and that they would be punctually paid at maturity, in consequence of which assurance he purchased them. Pierce af-terwards transferred the notes to the respondents, stating to them what had passed between him and the maker, on the faith of which statement they took the notes without endorsement. To avoid the effect of this promise made to Pierce, the complainant by amended bill states that it was made before he discovered that Davis had no title to the land, and in utter ignorance of the de-fence to the notes.
Under the provisions of our statute, it is true as a general rule that the maker of a promissory note, after assignment, is entitled to the benefit of all want of lawful consideration, failure of consideration, payments, discounts and sets off, previous to notice of assignment, as fully as such defence could have been made against the payee; and this rule must prevail unless the facts here disclosed create an exception by operating as a waiver of the de-fence, or by creating an equal equity with the holders.
In several of our sister states, this question has undergone judicial consideration, and if these decisions are not repugnant to principle, they must of course have great weight in settling the present case. The case of Carnes, for the use of Olden, v. Field & Harlan, 2 Yeates, 541, was in every essential particular, precisely like the case at bar, and the court said “ when the obligor represents the money thereon as justly due, to a person desirous of taking the assignment, and engages to pay the same, in faith and confidence whereof the assignment is procured, the former takes on himself the risque of the adequacy of consideration, and the fairness of the original transaction, and relinquishes any objections he might otherwise have on those grounds.” In the case of McMullin, for the use of Rudy, v. Wemer, 16 Sergeant & Rawle, 18, the same question was again before’ the Supreme Court of Pennsylvania, and it was held that if the obligor promisés to pay the bond to one who is about to take an assignment, in consequence whereof the assignment is made, he is bound by such promise, although he might have been ignorant at the time that the consideration had *722 failed. By the same court this question was decided a third time in the same way. 1 Penn. Rep. 24. These repeated adjudications give strength and force to the position, for it must be regarded as having been well considered.
The courts of Virginia have recognized this doctrine to its fullest extent. In the case of Buckner, Trustee, v. Smith et al. 1 Wash. Rep. 296, an assurance of payment to o,ne who was about to take an assignment of a bond, was held to be binding, although the bond had been given for a gaming consideration and was absolutely void by statute. In the case of Hoomis v. Smock, Ib. 389, it was admitted as a general principle that the assignee could not stand in a better situation than the assignor; but it was also said, that “ if an innocent man should be induced by the obligor to become a purchaser of the bond, it would be a deceit upon him, and he ought not to be subject to the same equity to which the obligor was entitled against the obligee.
This question was again before the Court of Appeals of Virginia in the case of Lomax v. Picket, and underwent a full investigation ; and the want of knowledge on the part of the payer of the failure of consideration at the time he gave the assurances of payment, was held to be an immaterial circumstance. In that transaction the assignee knew what the note had been given for^ but both parties it seems were ignorant of the failure of consideration. In this it goes even further than the case at bar, for there is no evidence that the assignee knew any thing of the consideration. On this ground of knowledge ol' the consideration in the case cited, it was insisted that the assignee took the note subject to the equity which existed between the original parties; but the court said that in order to make the defence available it ought to appear that he had a knowledge which the maker had not, and that the promise had been obtained under a concealment of such knowledge. The principles on which these cases were decided are distinctly recognized in Watson v. McLaren, 19 Wendell, 567, and in 4 Monroe.
These decisions may therefore all be considered as having been made directly on the point here presented, and they seem to comport with the principles of justice. In morals there can be no hardship in compelling him to bear the loss who has been the *723 cause of it. The representations made to Pierce at the time he was about to purchase the notes, amount to a waiver of any de-fence which the maker might have. The defence was certainly a matter which he had the power to waive if he thought proper. -His representations, it seems by the averment in the answer, were the inducement to Pierce to take the assignment, and constituted an equity with the assignee as strong as that which had existed in favor of the maker against the payee. The maker had secured himself by a penal bond, taken at the time of giving the notes; that was as available to him, as Davis’s endorsement to Pierce. All paper of this description is negotiable: if it is purchased without proper precaution, then the assignee takes it subject to all the equities which originally existed. The only mode by which a purchaser can relieve himself from this difficulty, is to make the proper inquiry of the maker, who is supposed by the law to know the consideration and the defence. If he states that the money will be paid, this is calculated to inspire confidence, and justice requires that such representation shall estop him from resisting payment on the ground of failure of consideration. It is said to be good policy to encourage, rather than chock the negotiability of mercantile paper. Surely its circulation would be greatly embarrased, if the maker may be permitted in the face of his assurances to the contrary, to go into the consideration against an innocent holder, who has been induced to purchase by an honest reliance on the statement of the maker that it would be paid.
We are referred to the language held by Judge Story in the 1st volume of his Treatise on Equity Jurisprudence, and it applies with great force to. the case. He says; “If a representation is made to another person, going to deal in a matter of interest upon the faith of that representation, the former shall make that representation good, if he knows it to be false.” And he adds, “Whether the party thus misrepresenting a fact knew it to be false, or made the assertion without knowing whether it were true or -false, is wholly immaterial; for the affirmation of what one does not know, or believe to be true, is equally in morals and law as unjustifiable as the affirmation of what is known to be positively false. And even if the party innocently represents a *724 fact by mistake, it is equally conclusive, for it operates as a surprise and imposition on the other party.” If these remarks be consistent with equity, then whether Hamer knew the consideration had failed or not, makes no difference. It was his duty to inquire into the title of Davis before he gave the notes. The omission to do so was the first act of negligence, and the representation made to Pierce was in relation to a matter about which it was Hamer’s business to be informed, and his statement was calculated to impose upon Pierce. Hamer undertook to make a statement in relation to his own liability to one who was about to purchase it, and the purchase having been made on the faith of that statement, he is bound in good faith to make it good. It is a rule at law and in equity, that whenever a loss must fall upon one of two innocent persons, it must be borne by the one who has been most negligent. Pierce was blameless in the matter, having used proper diligence to inform himself.
The complainant’s counsel, however, deny that these authorities are in accordance with principle, and have assumed three grounds in support of the bill. 1st. That complainant when he made the representation should have known that it was false; must have been conusant of the fraud practised on him by Davis and concealed it. 2d. That the promise is not binding unless the complainant was fully aware when he made it, that Pierce was about to take an assignment of the note; and 3d. That the assurance is not binding unless the present holder, as well as Pierce, took it on the faith of that assurance.
In regard to the first ground, it must be borne in mind that the defendant said nothing of the consideration. His statement was that the note should be paid. This ground is therefore certainly too broad in asserting that complainant knew that he was making a false representation in promising to pay, and also that complainant concealed the fraud which had been practised. If he knew it and still promised to pay, whether he communicated it to the defendant or not, it was beyond all question a waiver of the defence. The several members of this proposition can therefore be regarded as presenting but the single question, did Hamer know of the failure of consideration ? 1 have already said that such knowledge was immaterial. The same question was raised *725 in several of the decided cases, and expressly noticed in the decisions, and in none of them was it thought to be a material point.
In regard to the second ground, it does seem but reasonable that Hamer should have been apprised that Pierce was about to purchase the note; but must he not have been sufficiently aware of that fact to put him on his guard. This is a fact which might be proved by circumstantial testimony, and certainly the circumstances were such as to leave no other conclusion on the mind of Hamer than that Pierce was about to purchase the note. What other object could a stranger have had in making the inquiry ? It does not appear that Pierce knew any thing of the contract between Hamer and Davis, or that he could have had any other motive than to inform himself with a view to a purchase, and so Hamer must have understood. His answer shows this to have been his understanding. He' probably would not' have so answered any one whom he supposed to be a mere officious enquirer. A fair construction of his answer fully justifies the conclusion that he was apprised of the purpose for which the en-quiry was made. And as to the third ground, it is distinctly averred in the answer, so far as that is to be taken as true, that the holder took the note on the assurance which had been given to Pierce. Even if this was material, therefore, it sufficiently appears in the present aspect of this case.
In support of these several positions, we are referred to many authorities. The first is from Tucker’s Commentaries, for the purpose of showing that if the obligor does not know of his equity at the time he gives an assurance to one who is about to purchase, that the bond will be paid, then he does not forfeit his equity. The author has propounded the question, and answers that he thinks the obligor wouLd not lose his equity. His opinion or dictum does support the counsel in their first position, but the learned commentator does not seem to have been followed even in his own state. Plis position is in conflict with that of Judge Story, and the latter has the best support from precedents. The case of Honoré v. Dougherty, referred to, differed very materially from this case: There the assurance was given by a surety to the note? who Was known to be such. There was also reason to believe *726 that tlie assignee knew when he took the note, that a recovery would be contested by the principal. The decision turned mainly on the ground that the assurance had been given by the surety, who was not presumed to know any thing of the equity of his principal. The surety was looked upon as a mere stranger. The more recent case of Morrison v. Beckwith, 4 Monroe, 73, decided in the same court, is conclusive authority against the position taken by the counsel for complainant. In the case of Shreve v. Olds, 2 Marshall, the court held it to be competent for the maker to waive the illegality and fiaud in favor of an innocent holder, and in delivering the opinion, it is true, the learned judge laid some stress on the fact that the assurance was given with a full knowledge of legal exemption, and yet it is apparent that this was mentioned as a circumstance which placed the matter beyond doubt. There is no indication that the decision would have been different even without this knowledge of legal exemption.
The leading case of Pasley v. Freeman, 3 Term Rep. is also referred to, and many others belonging to the same class, based upon that decision, both in England and the United States. The question there decided is, that false and fraudulent representations, made by one person to another, concerning the credit of a third person, on the faith of which credit is given to that third person, give a right of action against the person making such representations, whether he be benefited by them or not. The knowledge of the falsity of the assertion was held to be material; but the present case is clearly distinguished from the case of Pasley v. Freeman, and all others of that class. Here Hamer was not making a representation in regard to a third person, but in regard to his own liability, a thing in which he was directly interested; and in reference to which it was in his discretion to waive any defence he might have. In Pasley v. Freeman, the person making the representation had no interest; there was no existing liability, nor did he undertake to incur any. No other ground of recovery could exist, but for fraud. Fraud is not here the ground of action, but it is the note which gives rise to the claim. In the one case the action is ex contractu, in the other it is ex delicto. No assertion made in reference to the credit of a third person, but it was in reference to what he would not do in reference to a pre-existing *727 contract. In the one case fraud must exist before the action can be brought; in the other case a recovery is allowed to prevent a fraud.
We are referred to another class of cases which fall properly under the equitable head of implied assent to a contract in which the party may have an interest, and in permitting which without urging his claim he is precluded if he knew of his interest; as if a prior mortgagee stand by and witness the execution of a second mortgage, in such case his silence is construed to operate as an assent. The rule does not apply to one who is ignorant of his rights, and hence it is insisted that Hamer, being ignorant of his defence, is not precluded. But these cases are also distinguished from the present. Hamer did not stand by and see the purchase made, but induced its consummation by a positive statement that it should be good to the assignee. The principle of these authorities has never been applied in a strictly analogous case. Hamer’s liability was a matter apparent. That was the subject of the contract, and he was necessarily aware of its existence, and when he undertook to give confirmation to that which was apparent evidence of a debt, he cannot be heard to gainsay it.
In’the decisions referred to, the object is to prevent fraud, by compelling every one who is conusant of his right, to disclose it and act in good faith towards the purchaser. In this case the law has the same object in view, and accomplishes it by compelling the complainant to make good his assertion; for although he had no such thing as fraud in view, yet a consequential injury would follow if he is to be permitted to set up a defence, after giving assurances that he had none.
The case of DaCosta v. Shrewsbury, 1 Bay. 211, has come under our notice, and although not referred to, it is an authority in point for complainant, but as it stands alone, opposed by all the decided cases, we cannot adopt the rule there laid down. The assignee of a bond, previous to the assignment, sent to the obligor to know if he had any discounts against it, or any objection to the assignment. He answered that the bond was justly due, and promised payment in work. He afterwards discovered that the land for which the bond had been given, was under mortgage, and refused payment. The court held that a recovery ought not *728 to be allowed. The decision seems to be based on two grounds: First, that the assignee of a bond takes it subject to the equity between the obligor and the obligee. And secondly, that a mere parol promise was not sufficient to destroy the defence. The first as a legal proposition is true, but the exceptions to the rule are shown by the cases above referred to. The obligor may waive his equity, and this may be done either directly or consequentially; and as to the second ground, it is believed to have been an erroneous application of a legal rule. The promise was not relied on as the cause of action; not as an extinguishment of the bond, but as a waiver of an equity against it. As such it was as good by parol as otherwise.
In regard to the construction of our statute it is proper to observe, that promissory notes, so far as regards the defences, are placed on a footing with bonds at common law. The assignee takes them subject to all equities existing between the original parties, and as that equity may be waived as to bonds, so it may be as regards notes. The most of the decisions referred to, were on bonds, and as bonds and notes stand upon the same fopting, the decisions are applicable. The statute will not justify us in going further in the one case, than the common law would in the other.
The principle contended for by respondent's counsel, received a recognition by this court in the case of McMurran v. Soria, 4 Howard’s Reports, 154. The defence of the maker was let in, it is true, but it was because his language did not amount to an assurance or promise of payment to the assignee.
On a careful review of all the authorities, we do not think they would justify giving the relief prayed for. The decree of the Chancellor must therefore be affirmed.