PRESTON *vs.* MANN AND ANOTHER.

Whether the plaintiff, on the trial of an action on a negotiable instrument, where the declaration contains no statement of intermediate indorsements, can rely on the incidents of the intermediate title, *qu?*

But where under such declaration, evidence relating to the intermediate title was introduced only to meet a matter of defence set up by the defendant, after the plaintiff had made out a *prima facie* case; it was held, that such evidence was properly permitted to go to the jury.

In this state, and in the courts of this country and of England generally, the proposition of Lord Denman, (*Pickard* v. *Sears*, 6 A. & E. 469,) seems to have met with approbation; that, "where one by his words or conduct, wilfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things, as existing at the same time."

The word "wilfully" as used in this connection, is not to be taken in the limited sense of the term "maliciously," or of the term "fraudulently," nor does it of necessity imply an active desire to produce a particular impression, or to induce a particular line of conduct.

Whatever the motive may be, one, who so acts or speaks, that the natural consequence of his words or conduct, will be, to influence another to change his conduct, is legally chargeable with an intent or wilful design, to induce the other to believe him, and to act upon that belief, if such prove to be the actual result.

Inasmuch as the doctrine of estoppel, especially concerns conscience and equity, ignorance, unaccompanied with culpability of any kind, ought to excuse conduct and language, which would otherwise render the author justly responsible for the injury resulting to another, who had placed confidence in them.

Preston *v.* Mann and another.

There are cases, however, where the excuse of ignorance can not be permitted to avail, without defeating the very principle of justice, upon which the doctrine of estoppel is founded.

It would seem that where the alleged ignorance involves gross culpability, there should be a limit to the facility with which a party, whose words or conduct have misled another to the latter's injury, should be permitted to qualify his responsibility, by pleading his own fault.

One who has voluntarily induced another to believe that he was not ignorant of a certain matter is estopped, after the other has been betrayed by his false representation, from pleading a want of the knowledge which he has once designedly, and to another's hurt, assumed to possess.

Where one, with a view of purchasing a promissory note, to which the defendant was nominally a party, inquired of him respecting such note, stating all the particulars, and the latter replied, that it was a good note, and would be paid; it was held, that the defendant was bound to know that he would be understood as speaking intelligently, of a contract with which he was familiar, and that he could not afterwards be permitted to claim that said note was invalid, by reason of a defence of which he was ignorant when said representations were made.

THIS was an action brought by the plaintiff, as endorsee and holder of a promissory note, against Benning E. Mann and Samuel C. Savage, partners under the name of B. E. Mann & Co.

The declaration alleged, substantially, " that the said B. E. Mann & Co., at Hartford, on the 30th day of December, A. D. 1853, by their note of that date under their hands, for value received, promised, nine months after date, to pay to the order of themselves, at the Farmers and Mechanics Bank, the sum of eight hundred and thirty-two dollars and fifty-three cents, and that the defendants, by their endorsement of the note, ordered the same to be paid to the plaintiff or his order, according to the tenor of said note, of which the defendants then and there had notice, and thereby became liable, &c."

The defendants pleaded the general issue, and the cause was tried at the term of the superior court for the county of Tolland, holden in November, 1855.

On the trial, the plaintiff introduced in evidence the note in question, which was for $832.52, dated December 30, 1853, and payable to the order of the makers, at the Farmers

and Mechanics Bank at Hartford, nine months from date. It was endorsed with the names of B. E. Mann and Co., and De W. C. Freeman; and had also been endorsed with the name of C. Glazier, which had been stricken out.

The plaintiff also introduced evidence to prove, and claimed to have proved that the firm of B. E. Mann & Co., consisted of the defendants, and that the plaintiff purchased and paid the full amount of said note, about one month after it fell due, of Carlos Glazier, who was the holder of it at the time it became due.

The plaintiff also claimed to have proved, that said Glazier purchased said note of one De Witt C. Freeman, supposing that Freeman had an interest in it, and also had authority from the defendants to dispose of it. But said Glazier's only knowledge of the actual ownership of the note, was his inference from the fact, that Freeman had it in his hands, and was offering it for sale. That Glazier paid Freeman the full amount of the note, deducting six *per cent.* for the time it had to run, and also deducting seventy dollars, which was the amount of a book account which Glazier had against Freeman; and that said note was so transferred to Glazier, on the 19th day of May, 1854.

The plaintiff also claimed to have proved that Freeman sold said note to Glazier, with the consent and authority of B. E. Mann, one of the defendants, and that Freeman informed Glazier of said consent and authority, before he purchased the same, and declared to Glazier, that said note was a good and valid note; that Glazier, being informed by Freeman that said firm of B. E. Mann & Co., consisted of B. E. Mann and Samuel C. Savage, declined purchasing the note, until he could see Savage; that he called upon Savage on the 19th day of May, 1854, and before he purchased the note, for the purpose of satisfying himself as to its character, and told Savage, that he came to him for advice, and informed him that Freeman had offered him a note, signed by B. E. Mann & Co., made payable to their order, at nine months from date, and dated December 30th, 1853, and de-

scribed the amount of the note; that he asked Savage if he was one of the firm of B. E. Mann & Co., as described in the note; that Savage replied that he was; that Glazier further asked Savage if said note was a good note and would be paid at maturity, and that Savage replied that it was a good note and would be paid at maturity; that Glazier thereupon informed Savage that he should go home and discount said note; and immediately returned to his store, where Freeman was awaiting the result of said interview with Savage, and that induced by the conduct and declarations of the defendants, Glazier purchased said note.

To the admission of this evidence the defendants objected, on the ground that it was inadmissible under the declaration, and that said note came to the plaintiff after due. But the court overruled the objection, and admitted the evidence.

The defendants then offered evidence to prove that said partnership was dissolved on the 6th day of May, 1854, and produced as evidence, that due notice had been given of such dissolution, a newspaper printed in said city of Hartford, containing a notice of such dissolution, which notice was admitted to be correct; and also evidence that Glazier and the plaintiff had no previous dealings with said firm, and that said B. E. Mann, was the acting partner in said firm.

The defendants also claimed to have proved that the note in suit was executed and endorsed (if at all,) and put in circulation, after such dissolution of said copartnership, and after publication of said notice, by Benning E. Mann solely, and without the knowledge of Savage; and that it was so executed, endorsed and put in circulation, after said 6th day of May, 1854, and was then dated back to December 30th, 1853.

The defendants also claimed to have proved, that when Glazier informed Savage that said note was offered to him by Freeman for sale, and enquired respecting it, Savage informed Glazier that he had formerly been a partner of the firm of B. E. Mann & Co., but that said firm was dissolved on the 6th day of May, 1854, and that the legitimate paper of B. E. Mann & Co., would be paid at maturity; that Gla-

zier told Savage that the note was dated December 30th, 1853, and the amount of said note, but he did not inform Savage, nor did Savage know, that the note had been so made and put in circulation after said dissolution, nor that the note was void by reason of usury and illegal consideration; but was wholly ignorant of all the circumstances attending the formation and circulation of said note, and that said note was not a partnership transaction, and was executed after said dissolution.

The defendants also offered much evidence to prove, and claimed to have proved, that said note was void, and was made wholly upon usurious and illegal considerations; that no part of the consideration of said note was for money or other value actually received, but was the balance due on other usurious transactions with one Joseph S. Curtis, and that said Curtis had loaned money to said firm, without the knowledge of said Savage, at the rate of 73 *per cent. per annum,* and procured the interest to be compounded monthly or oftener, and added to the principal; that said note was entirely made up of said usurious interest, and was wholly without consideration. That Savage, at the time of said conversation with Glazier, and long afterward, was entirely ignorant that said note was tainted with usury, and was void and bore a false date; and that from its date, Savage supposed the note enquired about, to have been then executed, and to be genuine.

The defendants requested the court to charge the jury in writing, that if the note in suit was executed, or put in circulation after the dissolution of the partnership, the plaintiff could not recover.

That the publication and notice in the newspapers of the dissolution on May 6th, 1854, was sufficient notice of the dissolution to all persons who had not had previous dealings with the firm, and that under this evidence, which was not contradicted, it was the duty of the jury to find that the firm was then dissolved, and that the plaintiff was bound to show by proof that he had previous dealings with the firm, or he could not recover on the note in this part of the case; that Preston

having taken the note after due, and having declared upon it as taken from the defendants, held it subject to all the defences or infirmities affecting it.

That the conduct or the declarations of Savage to Glazier did not amount to an admission or an estoppel, unless made intelligently and with a full knowledge of the facts,—and that the note was made after the dissolution, and if he, Savage, spoke of a note, it was of one purporting to be dated in fact, on the 30th day of December, 1853.

That the declarations of Savage, as sworn to by Glazier, did not amount to a new promise to pay a note given in fact after the dissolution, he Savage being ignorant of that fact.

That if this note had never been in the hands of any other parties as owners thereof, than B. E. Mann & Co., until Glazier received it, then the note had no legal existence, till May 19th, and was therefore put in circulation after the notice of dissolution, and after the dissolution, and so the plaintiff could not recover upon it, unless the retiring partner, Savage, assented to the putting it in circulation after the dissolution.

If the jury should find that Savage informed Glazier, at the time when Glazier either showed or spoke of the note, that the partnership was dissolved, then Glazier took the note at his own peril and subject to all the infirmities and defences affecting it.

That the notice of the dissolution having been published and there being no contradictory evidence, the jury were bound to find that the partnership was dissolved on the 6th day of May, 1854, unless they should find that Glazier had had previous dealings with the defendants of which there is proof.

If the jury shall find that the note was put in circulation after the dissolution of the partnership and without the knowledge of Savage that said note was so put in circulation, then the plaintiff can not recover of the defendants.

The defendants also requested the court to charge the jury on the question of usury, but a specific statement of that re-

quest and of the charge of the court on that point are rendered immaterial by the opinion of the court.

The court did not in charging the jury comply with the request of the defendants, but on the question of the plaintiff's right to maintain the present action, charged them substantially as follows:

This note was conveyed to the plaintiff by Carlos Glazier, who, it is claimed, purchased it in a fair business transaction, paid its full amount, less only *six per cent.*, and took it subject to all the infirmities to which it would be liable in the possession of Glazier, and succeeded to all the rights which Glazier acquired by said purchase.

On the question of estoppel, after alluding to the claim of the parties and the evidence relied upon by each of them, the court charged substantially as follows:

"If you shall find from the evidence that the defendants gave Glazier to understand and believe, that this note was a good genuine note, and that acting upon that belief, Glazier purchased the note as claimed by the plaintiff, then the defendants should be estopped from saying now that the note is not a genuine and good note, as against them, although the contrary may be the fact; or in other words they should now be estopped from setting up the defence claimed by them."

On the question of usury, the charge was as follows:

"If you shall find that the money borrowed by Mann & Co., of Curtis, was borrowed upon an agreement to pay the sum of twenty cents a day for the use of one hundred dollars, such agreement is clearly usurious; and if you shall further find that the whole or any part of the note in suit, is made up of such usurious interest, then the whole or such part of the note as constitutes such interest, is void by the statutes of this state, and no recovery can be had therefor in this suit. The burden to establish this fact rests upon the defendants."

Upon the question whether the note was executed and put in circulation after the dissolution of the co-partnership, the charge was as follows:

"The law is so, that if this note was executed and put in circulation after the dissolution of the co-partnership, and

there be no estoppel found by you, the plaintiff can not re-cover against the defendant Savage, unless you shall find that he assented to its being put in circulation and author-ized it."

" If you shall find that Mann consented to this transaction and authorized it, and that Savage did not, you may find a verdict against him, though your verdict may be for Savage."

" It being proved and admitted that notice of the dissolu-tion of the firm of Mann & Co., was published on the 6th day of May, 1854, such publication was in law notice to all persons who had not previous dealings with the firm of such dissolution, and if the plaintiff claims an exemption from this rule, he should show that he had previous dealings with said firm."

The jury returned a verdict against both defendants, who thereupon moved for a new trial on the ground that the court erred in admitting testimony objected to by them, and for a misdirection.

*Welles* and *Fellowes*, in support of the motion.

1. There was a variance between the declaration and the proof. For Freeman's name not having been stricken from the note as an endorser, the declaration omits to trace the plaintiff's title through him and alleges the plaintiff to be en-dorsee of the defendants.

2. The plaintiff could not protect himself under Glazier's title. Glazier's name was erased from the note, and he was not alleged in the declaration to be the endorser to the plaintiff.

3. No estoppel was proved, and the defendant was entitled to a charge to that effect from the court below. *Howard* v. *Hudson,* 20 Eng. L. & Eq. R., 48. *Brown* v. *Wheeler,* 17 Conn. R., 345. *Roe* v. *Jerome,* 18 Conn. R., 138. *Whittaker* v. *Williams,* 20 Conn. R. 104. *Dyer* v. *Cady,* 20 Conn. R., 568. *Williams* v. *Bartholomew,* 1 B. & P., 326.

*T. C. Perkins* and *Hyde,* against the motion.

1. The note in suit came into the plaintiff's hands after it

became due. He therefore took it subject to all the equities to which it was subject in the hands of Glazier, who was the owner of it when it fell due; and he succeeded to all Glazier's rights. *Chalmers and others* v. *Lanion*, 1 Camp., 383. *Thomas* v. *Newton*, 12 E. C. L. R., 285. Story, on Prom. Notes, §§ 178, 195. 1 Pars. on Contr., 212, 213. 18 Conn. R., 138.

2. The charge of the court upon the claim of the plaintiff, that in consequence of the representations of Savage, Glazier was induced to purchase the note, was correct. These declarations were made with the knowledge that Glazier was considering the matter of purchasing the note, and for the purpose of influencing his decision.

STORRS, J. On the trial in the court below, the right of the plaintiff to recover against Savage, one of the defendants, was disputed on various grounds; chiefly, because the note in suit, although purporting to be executed in the name of the firm of B. E. Mann & Co., of which Savage had been a member, and bearing date during the continuance of the partnership, was in fact executed by another partner, after that relation had been dissolved, and was therefore antedated. It is insisted that such a defence, whatever incidents may be connected with it, which might make it unavailable against a holder who had received it in good faith before maturity, may be successfully set up against a party, who, like the plaintiff, bought the note after it became due.

To meet this position of the defendant, the plaintiff offered, and was permitted to prove, that while the note, which was payable to the order of the makers, and by them endorsed and transferred to one Freeman, who before its maturity transferred it by endorsement to one Glazier, was in the hands of the latter, a transaction passed between Savage and Glazier, which, upon the principles of the doctrine of estoppel, would preclude the former from setting up against Glazier, the defence referred to; and that the plaintiff, as a purchaser for value from Glazier, succeeded fully to all his rights and equities. It is not denied that such would be the legal

operation of the purchase; but the defendant urges that the plaintiff can not under the allegations of his declaration, take advantage of the incidents of the intermediate title; having averred an endorsement by the payees directly to himself, omitting any reference to the former endorsees and virtually striking their names from the note. The defendant says further, that the conduct which is imputed to Savage, and is assumed to amount to an estoppel, and which might do so, if connected with a contemporaneous knowledge of the facts to which his conduct had reference, fails in the absence of such knowledge, to constitute any estoppel whatever.

The difficulty which is suggested, relative to the declaration, would seem to be nicely technical, and should not be favored unless in conformity to established authorities. The point made is not supported by any American decisions, and we are referred only to a marginal note of an English exchequer case, (*Steen* v. *Yglesias*, 1 Gale, 98,) no report of which has been produced, in which appears a qualified and guarded suggestion, sometimes repeated in text-books in the same qualified manner, that the omission in a declaration of a statement of intermediate endorsements *would seem* to deprive the plaintiff of the benefit of the intermediate title. There are technical objections which make the suggestion at least questionable. The right of a plaintiff to omit to trace his title in his declaration through all the previous endorsees, and to allege an endorsement from any one of them to himself, must depend on the principle that the legal effect of a transfer through various prior endorsers is the same as a transfer to the plaintiff from the first endorser. A defendant would otherwise be permitted to contradict a declaration like the present by showing that the transfer was not made by the first endorser to the plaintiff, but to a third person from whom the plaintiff took his title. This is not so, and the plaintiff, it would seem, should be permitted, under such an allegation as he has made, to prove, in strict conformity with the substance of his declaration, that his title came through a chain of several former holders; and to avail himself of any of the incidents of the title of any of them. However this

may be, we have concluded that, inasmuch as the plaintiff had made out a *prima facie* case, and introduced evidence of an intermediate title, merely to meet a matter of defence set up by the other party, he was rightly permitted to do so, although he had not specifically declared upon such title.

The question of estoppel involves graver considerations, and in sustaining the charge of the court below, we may approach to the verge of the law. The doctrine of *estoppel in pais*, notwithstanding the great number of cases which have turned upon it, and are reported in the books, can not be said even yet to rest upon any determinate legal test, which will reconcile the decisions, or will embrace all transactions, to which the great principles of equitable necessity, wherein it originated, demand that it should be applied. In fact, it is because it is so purely a doctrine of practical equity, that its technical application is so difficult, and its reduction to the form of abstract formulas is still unaccomplished. An able judge (Baron Park,) has suggested that only such acts and conduct should be treated as an *estoppel in pais*, as would sustain an averment of false representation in an action on the case. This test, however, does not seem to have been adopted by leading jurists. In Connecticut, and in fact in the courts of this country, and of England generally, the proposition of Lord Denman, (*Pichard* v. *Sears*, 6 Adol. & El., 469,) seems to have met with approbation. " Where one by his words or conduct wilfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a' different state of things, as existing at the same time." The word " wilfully," as used in this connection, is not to be taken in the limited sense of the term *maliciously*, or of the term *fraudulently ;* nor does it of necessity imply an active desire to produce a particular impression, or to induce a particular line of conduct. Whatever the motive may be, if one so acts or speaks, that the natural consequence of his words and conduct will be to influence another to change his condition, he is legally chargeable with an intent, a wilful design, to in-

duce the other to believe him, and to act upon that belief, if such proves to be the actual result.

It is enough that " a reasonable man in the situation of that other would believe that it was meant that he should act upon it." ( 1 Saund. Pl. & Ev., 1088.) The precise question, by the claim of the defence, relates therefore, not to the intent, design, or wilfulness, with which Savage produced the impression on Glazier's mind, that the note was a valid note of B. E. Mann & Co., for the intent sufficiently appears; but the real enquiry is, how far his ignorance of the facts, to which his representations had reference, will qualify and excuse his conduct, and relieve him of the responsibilty which would ordinarily attach to it. For it is undeniably true, inasmuch as the doctrine of estoppel especially concerns conscience and equity, that ignorance unaccompanied with culpability of any kind, ought to excuse conduct and language which would otherwise render the author justly responsible for the injury resulting to another who had placed confidence in them. For instance, it often happens that a mere omission of duty (such as the silence of the owner of property, while it is sold in his presence as the property of another,) will create an estoppel in favor of the party who has been misled by such an omission. If, however, the silence were the result of an ignorance of his title, no omission of duty could be charged upon the owner; he would be as innocent as the purchaser, and would not be estopped from his right to assert his title against the latter.

There are, however, other cases where the excuse of ignorance can not be permitted to avail, without defeating the very principle of justice upon which the doctrine of estoppel is founded. It would seem that where the alleged ignorance involves gross culpability, there should be a limit to the facility with which a party whose words or conduct have misled another to the latter's injury, should be permitted to qualify his responsibility by pleading his own fault. For instance, if one, who is apparently a party to a bill of exchange, on being enquired of concerning the signature pronounces it to be genuine, he can not afterwards set up against a pur-

chaser whom he has misled, forgery of his own name, although he may have accredited the bill ignorantly. How far the breach of duty should extend to preclude the party guilty of it, from extenuating his false representations by his want of knowledge, it is unnecessary to enquire. Suitably restricted, the principle of which we have given an intimation, unquestionably exists, and indeed was hinted at in the opinion of this court in a recent case. (*Whitaker* v. *Williams,* 20 Conn. R., 104.) " The doctrine," say the court, " that one should not be permitted to retract representations, by which he has induced another to adopt a particular course of conduct, supposes, and is to be understood with, the qualification (which is indeed part of the principle itself,) that the one, by whom such representations were made, had a knowledge of his rights. In laying down this qualification we speak of the principle generally, and would not be understood to say that there may not be cases where there is *such culpability* on the part of the person making such representations, or such particular circumstances or consequences attending them, that he would not be permitted to set up the want of such knowledge."

In one class of transactions, the excuse of ignorance must obviously yield to the operation of the very principle of *estoppel in pais.* We refer to cases, among which, on the hypothesis that the jury have found the facts as claimed by the plaintiff, the present may properly be classified; cases where the misrepresentations which mislead another, are made by a party, who is consciously ignorant of the matter to which they relate at the very time that he professes a full knowledge of it. This wilful and wrongful assumption of knowledge is the chief element in the imposition which he practices, and he should not afterwards be suffered to disclaim an acquaintance with facts which he has once unjustly and injuriously professed to know. He has voluntarily induced another to believe that he was not ignorant of a certain matter: after the other has been betrayed by this false representation, its author should not be permitted to retract it, any more than he should be permitted to deny any other conclusion which

he wilfully suffered the other to draw from his words and conduct. He is estopped from pleading a want of the knowledge which he has once designedly assumed to possess, and to another's hurt.

Let us apply this idea to the facts before us. Glazier seeks an interview with Savage on the subject of a note, to which Savage is nominally a party, with the view, which he discloses to Savage at the time, of purchasing the obligation. His enquiry does not in general terms relate to negotiable paper, signed in a certain manner, but he states to Savage all the particulars of the note in question, its date, its amount, the time of its maturity, the form of signature, and the names of the payees. To an enquiry thus intelligently put, Savage replies that it is a good note and will be paid at maturity; an answer from which Glazier might rightfully infer that Savage was acquainted with the particular note spoken of, and the circumstances attending it, and that he knew it to be a valid note which ought to be paid. Savage was bound to know and did know that Glazier would understand him as speaking intelligently of a contract with which he was familiar. Shall he be now allowed to say that he knew nothing of the particular note? that he was totally ignorant of its existence, and the circumstances attending it at the time of his interview with Glazier? We can not recognize such a principle. The representations of Savage being made relative to a matter affecting his own pecuniary interest, must have carried with them to the mind of the person with whom he was dealing, all the sanctions of a new promise. In fact, in cases not distinguishable from the present, courts have sometimes chosen to regard declarations of the kind imputed to the defendant, in the light of new and obligatory promises. In a Pennsylvania case, (*Carnes* v. *Field*, 2 Yeates, 541,) this idea was applied to circumstances very similar to those now under review. A money bond had been given for certain lands under the belief that the title was good to the whole, while in fact it proved defective in respect to a very large proportion of the entire quantity. Before ascertaining this fact, the obligors were called upon by a person

who desired to purchase the obligation, and who was informed by them that it was signed by them, and would be paid. The court held, in an action brought by the party who had purchased the bond under these circumstances, that he could recover, notwithstanding the want of knowledge of the state of their title on the part of the obligors, on the ground that the representation of the latter was, under the circumstances, to be treated as a new promise. The reason given for the decision may be somewhat questioned, as the independent efficacy of such a promise is evidently not so great as to make it a substantive ground of legal liability, and its effect would seem to be rather that of a representation or ratification, conclusive upon the party who makes it in favor of the party induced by it to change his condition.

It will be seen that the present case furnishes clearer indications than that just cited, of an improper assumption of knowledge by the party now seeking to avoid the effect of his representations on the ground that they were not intelligently made.

We are not able to discover that our conclusion is inconsistent with any of the adjudged cases to which our attention has been called.

The charge of the court below, on the point which we have considered, being conformable to the views we have expressed, was, in our opinion, correct. Our disposition of that question renders it unnecessary to consider the others which have been presented on the argument.

A new trial is not advised.

In this opinion, the other judges, ELLSWORTH and HINMAN, concurred.

New trial not to be granted.