ANNIE E. LARKIN *vs.* WILLIAM L. PARMELEE.

Third Judicial District, New Haven, January Term, 1897. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Where the conduct relied upon to establish an equitable estoppel is mere omission or neglect, the question of intent is material and is to be determined largely as one of fact.

The plaintiff, the owner of a horse, wagon and harness, permitted her brother to use them in his market and grocery business, and did not object when she found he had painted his name and business on the wagon. She had no pecuniary interest in his business, and acted in entire good faith and without any thought that the property would be liable to attachment for his debts, or that her action would in anywise deceive his creditors or give him false credit. *Held* that these facts were merely evidential, and not conclusive, as matter of law, that the plaintiff had placed the property in the possession of her brother with the intent to represent him as the actual owner.

The plaintiff knew that the wagon had been attached some months previous, in a suit against her brother, and that the attachment had been released; but this was after the credit had been given to her brother by those claiming the benefit of the estoppel. *Held* that her knowledge of these facts did not affect her right of recovery.

[Argued January 20th—decided March 23d, 1897.]

ACTION of replevin, brought to the Court of Common Pleas in New Haven County and tried to the court, *Hotchkiss, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant for alleged errors in the rulings of the court. *No error.*

The defendant's answer sets up in defense an equitable estoppel. It alleges that Bryan, Miner & Read brought an action against George W. Larkin, brother of the plaintiff, in the service of which the defendant, a deputy sheriff, attached the goods described in the complaint; that the action was brought to collect $380, the value of merchandise sold said Larkin on credit; that said firm were induced to give the credit by reason of their belief that said Larkin owned the horse, wagon and harness attached; and that this belief was caused by conduct of the plaintiff equivalent to a representation to the firm by the plaintiff that the property attached belonged to George W. Larkin. The allegations of material facts constituting such conduct, are contained in paragraph 6 of the answer, which is as follows :—

" The plaintiff had full knowledge that the said George W. Larkin was engaged in said business at said place in his own name, and that he had not sufficient capital to conduct said business, and was compelled to purchase large quantities of goods on credit. She also had full knowledge that the words, ' George W. Larkin, Meats,' were printed in large letters on the windows of said building, and that for the purpose of assisting and enabling the said George W. Larkin to carry on said business in his own name at said place, and to purchase on credit goods, wares and merchandise to be used by him therein, the plaintiff delivered to him the horse, harness, bell, and wagon aforesaid, in order that he might use the same in the prosecution of said business, and then knowing that the use of said horse, harness, bell and wagon with the name of said ' George W. Larkin, Meats ' printed on said wagon, would induce those persons who should sell goods, wares and merchandise to the said George W. Larkin on credit, to believe that he was the owner thereof; and also knowing that the said George W. Larkin from and after the date of such delivery did obtain from various persons goods, wares and merchandise on credit, and which were used by him in the prosecution of said business, and also knowing that the use and possession of said horse, harness, bell and wagon with the name ' George W. Larkin ' printed thereon, as above

described, did in fact enable him to obtain on credit such goods, wares and merchandise as he needed from time to time in said business, and which credit was given to the said George W. Larkin by reason of the fact that his name was printed on said wagon."

This paragraph was denied, and the court found the issues for the plaintiff. It appeared that sometime in the fall of 1895, and several months before this action was commenced, Dillon and Douglass, a firm of wholesale grocers in New Haven, who had a claim against said George W. Larkin for groceries sold him on credit, attached the property in the store and the wagon described in the plaintiff's complaint, which attachment was subsequently released, and the property so attached was returned to the said George W. Larkin, who continued to use the same in the same manner as before, until March 7th, 1896. At the time of the attachment by said Dillon and Douglass, the plaintiff had full knowledge thereof, and that they claimed to have an account against said George W. Larkin, that such attachment was released, and the property placed back again in the possession of said George W. Larkin, and that it was used by him in his business in the same manner as before the attachment.

*V. Munger*, for the appellant (defendant).

Upon these facts the plaintiff is estopped from claiming title to the property in dispute. *O'Connor* v. *Clark*, 170 Pa. St. 518; *Preston* v. *Mann*, 25 Conn. 119; *Winton* v. *Hart*, 39 id. 16; *Main* v. *Brown*, 56 id. 345; *Canfield* v. *Gregory*, 66 id. 17; *Anderson* v. *Hubbell*, 47 Amer. Rep. 395; *Saltus* v. *Everett*, 20 Wend. 278; *McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325. It appears that long before the attachment of Bryan, Miner & Read, this identical property was attached by Dillon & Douglass. The property in the store was attached with the wagon. No distinction was, therefore, made as to the ownership of the property attached. That attachment was released and all the property returned to the possession of George W. Larkin. The plaintiff had full knowledge of all these facts. She knew that creditors of her brother

believed that George W. Larkin was the owner of this wagon, and acting upon that belief had attached it, claiming it to be his property. The plaintiff was estopped on these grounds. *Mitchell* v. *Read*, 9 Cal. 204; *Horn* v. *Cole*, 51 N. H. 287; *Drew* v. *Kimball*, 43 id. 282; *Canfield* v. *Gregory*, *supra*.

*Denis T. Walsh*, for the appellee (plaintiff).

The conduct of the plaintiff at no time was such as to estop her from asserting title to said property. The case of *O' Connor* v. *Clark*, 170 Pa. St. 318, differs very materially from this case. There the name and occupation of the employee, *viz*: " George Tracy, Piano Mover," were printed on the wagon by the direction and with the consent of the said John O'Connor, "for the purpose of creating the impression and inducing the public to believe that the property belonged to Tracy." Here there was no such intention. In *Mitchell* v. *Read*, 9 Cal. 204, there was a direct representation by the plaintiff that the goods attached were the property of Haskell, against whom they were attached. The doctrine of estoppel, as applied in this case, has no application in the present case. The plaintiff in the present case neither directly nor indirectly represented to any person that George W. Larkin was the owner of said property. So in *Horn* v. *Cole*, 51 N. H. 287, the plaintiff directly represented that the property attached was the property of the party against whom it was attached.. These cases did not meet the approval of our court in *Kinney* v. *Whiton*, 44 Conn. 262. There must have been an intention to mislead or such culpable negligence as would be legally equivalent to such an intention. *Preston* v. *Mann*, 25 Conn. 118.; *Taylor* v. *Ely*, ibid. 250; *Fountain* v. *Whelpley*, 77 Me. 132; *Viele* v. *Judson*, 82 N. Y. 32; *Fawcett* v. *New Haven Organ Co.*, 47 Conn. 224; *Starkweather* v. *Goodman*, 48 id. 101; *Canfield* v. *Gregory*, 66 id. 9. It was the duty of the defendant (Bryan, Miner & Read) to inquire as to the ownership of said property. The doctrine of estoppel will not be applied in favor of any person who has not "exercised due diligence to know the truth." *Brown* v. *Blydenburg*, 7 N. Y. 141; *Kellogg* v. *Smith*, 26 id. 18; *Morgan*

v. *Farrel*, 58 Conn. 427. The alleged conduct of the plaintiff, whereby Bryan, Miner & Read were misled into selling Larkin goods on credit, does not extend beyond July 1st, 1895; and hence is immaterial. *Hill* v. *Van Sandt*, 40 Pac. Rep. 676; *Lincoln* v. *Gay*, 164 Mass. 540.

HAMERSLEY, J. The finding details the evidential facts upon which the trial court reached its conclusion that the conduct of the plaintiff, as proved, did not estop her from asserting her ownership of the property attached. We think the conclusion was supported by the facts detailed; but it is only necessary to discuss it in respect to the claim that certain of the subordinate facts found demand, as a matter of law, a different conclusion.

When the representation claimed as having induced a party to change his position in reliance on its truth, must be established by proof of a course of conduct, and especially when such conduct consists in a mere omission or negligence, the question of intention is largely one of fact. *Morgan* v. *Farrel*, 58 Conn. 413, 426; *Starkweather* v. *Goodman*, 48 id. 101, 105; *Moore* v. *Bowman*, 47 N. H. 494, 499. And so it was in the case at bar. The plaintiff owned a horse, wagon and harness; she permitted her brother to use this property in connection with his business of carrying on a market and grocery; the brother, without her knowledge, painted on the wagon the words " George W. Larkin, Meats; " neither the plaintiff nor her brother ever asserted that these words meant a proclamation to the public that the brother owned the horse, wagon and harness, and neither of them ever represented to any one that the brother owned or had any interest in the property; after the words had been painted the plaintiff saw them, but made no objection or reference to the matter; the plaintiff's conduct was in entire good faith, without any anticipation that the property would be liable to attachment for her brother's debts, or that her action would in any manner tend to deceive his creditors or give him any false credit.

Upon these facts, in connection with the other finding of the court that the plaintiff had no interest in her brother's

business, the court refused to find that the plaintiff put the property in her brother's possession with intent that whoever might see it in his possession should act upon the presump-. tion that her brother owned the property. In this we think the court did not violate any controlling rule of law. Permitting a market-man to deliver his goods with a team not his own, is not necessarily an assertion that he owns the team. It is quite distinguishable from placing in his custody goods which it is his business to sell. "John Smith, Meats," painted on the delivery-wagon used by a market-man may, under some circumstances, tend to support an assertion of title; but it is not necessarily, nor ordinarily, more than an advertisement of his business. These acts do not necessarily carry a declaration to all the world that John Smith owns the wagon he is driving. It is not so clearly the natural result of such possession to induce reasonable men, on that ground, to give a credit to the possessor they otherwise would not give, as to impose, in every case, upon the real owner a duty which he is bound in conscience to perform, of putting a stop to the possession of, or of erasing the advertisement from, the wagon. These things are evidential facts, of more or less weight according to the circumstances of each particular case, tending to prove that the real owner did put the property into the possession of another with an intention to represent an actual ownership in the possessor, and to induce others to act upon that representation as true; but they are not in themselves, as matter at law, conclusive evidence of this essential element of an equitable estoppel.

The doctrine of estoppel *in pais* especially concerns conscience and equity. Where one of two innocent persons must suffer, it is frequently—perhaps generally—equitable that the loss should fall upon the one who has been the cause of the injury, rather than upon the other who is not only innocent, but without fault in the matter. And so, in applying the principle stated by LORD DENMAN in *Pickard* v. *Sears*, 6 Adol. & El. 469, we have held that " whatever the motive may be, if one so acts or speaks, that the natural consequence of his words and conduct will be to influence another to

change his condition, he is legally chargeable with an intent, a wilful design, to induce the other to believe him, and to act upon that belief, if such proves to be the actual result." And for the same reason, *i. e.*, that the doctrine of estoppel *in pais* " is so purely a doctrine of practical equity," we have also held the imputing in each particular case, to a person whose course of action is unaccompanied by fraud or any culpability, knowledge of consequences that may follow his conduct, is not wholly subject to abstract formulas, but depends somewhat on the actual equities of the case. *Preston* v. *Mann*, 25 Conn. 118, 128; *Taylor* v. *Ely*, ibid. 250, 258; *Danforth* v. *Adams*, 29 id. 107, 110. As stated by BALDWIN, J. in a recent case: "An equitable estoppel does not so much shut out the truth as let in the truth, and the whole truth. Its office is not to support some strict rule of law, but to show what equity and good conscience require, under the particular circumstances of the case, irrespective of what might otherwise be the legal rights of the parties." *Canfield, Trustee,* v. *Gregory*, 66 Conn. 9, 17. Applying the principle of these cases to the finding of the trial court, we think its conclusion is a conclusion of fact in harmony with the settled law of estoppel *in pais*.

It is by no means clear that the facts proven do not fail to support other essential elements of an equitable estoppel; but the one considered is fatal to the defendant's claim.

The plaintiff's knowledge of an attachment by Dillon & Douglass, which attachment was directly released, as stated in the finding, cannot affect the result. This is a matter that arose subsequent to the credit given by the creditors claiming the benefit of an estoppel, and is entirely insufficient to support any theory of a declaration by the plaintiff at the time of the defendant's attachment, that the goods attached belonged to George W. Larkin.

There is no error in the judgment of the Court of Common Pleas.

In this opinion the other judges concurred.