CHARLES S. CANFIELD, TRUSTEE, *vs.* JAMES B. GREGORY.

Third Judicial District, New Haven, January Term, 1895. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The office of an equitable estoppel is not to support some strict rule of law, but to show what equity and good conscience require, under the particular circumstances of the case, irrespective of what might otherwise be the legal rights of the parties.

Bad faith, willful wrong, or gross carelessness, are not essential to an estoppel *in pais*, provided the acts or representations are naturally calculated to mislead, and the party injured had a right to rely thereon.

In a suit by a trustee in insolvency of a Connecticut joint stock company, to recover an unpaid assessment upon the defendant's stock, the jury found that the defendant was a promoter of the company, and one of the subscribers to its articles of association, which were in due form; that he had caused the articles to be published as due evidence of its organization and signed the certificate that 20 per cent of its capital

stock had been paid in in cash; that he had been a director and president of the company, and as such had been active in the management of its affairs and in contracting the debts which remained unpaid and rendered the company insolvent. *Held:*—

1. That the defendant was thereby estopped from defending upon the ground that the required 20 per cent of its capital stock had not in fact been paid in in cash and that the company was, by reason thereof, incapable of transacting business.

2. That it was not necessary to such estoppel that the defendant should have acted willfully and premeditatedly in holding out the company as a duly organized corporation capable of transacting business; nor that his acts and representations were in fact ever known to or relied upon by the creditors represented by the trustee.

3. That the organization certificate, when filed, became a matter of public record, and every person contracting with the company, as a corporation, was conclusively presumed to have done so in view of the statements contained therein.

[Argued January 15th—decided February 8th, 1895.]

ACTION to recover the amount of unpaid installments upon capital stock subscribed for and purchased by the defendant, brought to the Superior Court in Fairfield County and tried to the jury before *Thayer, J.;* verdict and judgment for the plaintiff, and appeal by the defendant for alleged errors in the rulings and charge of the trial court. *No error.*

This was an action by the plaintiff as trustee of the insolvent estate of the Bridgeport Vitrified Pipe Company, a joint stock corporation, organized under the laws of Connecticut, for unpaid stock calls. The answer was *nul tiel corporation.* The plaintiff replied first, by a general denial, and second, by pleading that the defendant was a promoter of the company, and one of the subscribers to its articles of association, which were in due form; caused them to be published as evidence of its due organization, and notice of such organization to be given to the public as required by law; accepted an election to the office of a director, at the first meeting of the subscribers, and soon afterwards to that of president; and as such director and president was active in the management of the affairs of the company, and in contracting sundry debts in its behalf, which remained unpaid and had been presented as claims against its insolvent estate, and which were contracted, and the credit to the company

given, on the faith of the defendant's conduct as such director and president, and because the creditors were thereby led to believe that said company was duly organized; whereby he was estopped from maintaining the defense set up. A demurrer to the second reply was overruled (*Shumway, J.*), and the defendant then filed a rejoinder, to the effect that he had acted in good faith, and in the belief that the company was duly organized, and had been himself misled into such belief by the fraud of third parties. The cause was tried to the jury who returned a verdict for the plaintiff. The defendant appealed for error in overruling the demurrer, and in the charge to the jury.

*Robert E. De Forest*, for the appellant (defendant).

I. The court erred in overruling the demurrer to the second reply to the defendant's answer.

The answer denied the corporate existence of the pretended corporation of which the plaintiff claimed to be the trustee. This is conceded to be a sufficient answer. 4 Amer. & Eng. Ency. of Law, pp. 284–5, and notes. The plaintiff, in reply to this answer, sets up facts which he claims estop the defendant from making that defense. To constitute such estoppel it was necessary for him to allege facts showing that the defendant by his words or conduct had willfully caused the *plaintiff* to believe that the Bridgeport Vitrified Pipe Company had been duly organized and did legally exist as a corporation, and that the plaintiff (or those represented by him), *by reason of such words or conduct* of the defendant, subscribed for the stock of the company, and allowed the company to become their debtor in the sums due them from the company when this suit was brought. *East Haddam Bank* v. *Shailer*, 20 Conn., 21; *Preston* v. *Mann*, 25 id. 129, 130.

As to the stockholders, it is perfectly clear that the facts alleged constitute no such estoppel, because all the acts of the defendant alleged as constituting the estoppel were evidently *after* the stock had been subscribed for.

The notice to the public " that said company had been duly

organized," the advertisement of the articles of association, were *after* the stock had been subscribed for. The allegation is that the defendant caused the notice to be given as required by law. It is required by law to be given *after* the stock has been subscribed for. The advertisement of the articles of association shows the stock subscriptions as made. Gen. Stat., §§ 1947–48. Of course the subscriptions could not have been procured by acts of the defendant alleged to have been done *after* the subscriptions were made. So far the reply is manifestly insufficient and bad upon demurrer.

The remaining claim is that the creditors of the company were induced to become such creditors by reason of the acts of the defendant. No one of these alleged acts, nor all of them combined, would constitute such an estoppel *in pais*, as the plaintiff is endeavoring to establish. It is not enough to allege in general terms that "all the obligations and indebtedness of said company were contracted upon the faith and credit of said acts of the defendant." It is necessary to allege particular facts showing *how* such acts led to the contracting of such obligations and indebtedness—and further showing that the defendant acted willfully or with gross carelessness in said conduct. 1 Chitty on Pleadings, p. 214.

The defendant may have given the statutory notice, may have acted as a director, may have acted as president, may have acted as agent of the company, in entire good faith, being himself deceived and imposed upon, believing that the company had in fact been duly organized; in which events —events not negatived by the plaintiff's allegations—it is submitted that the defendant would not be estopped.

II. The court erred in the charge to the jury. The questions of fact were these: 1st. Did the defendant willfully and knowingly, by joining with other directors in the certificate that the company had been duly organized, by his holding the office of director and the office of president and acting as such, represent that the company was duly organized? 2d. Was this representation brought to the knowledge of the creditors of the company and other stockholders of the company? 3d. Did the other stockholders subscribe for

stock, or did the creditors who are represented in this action by the trustee, give credit to the company on the strength of that representation ? These were questions of fact for the jury, and it is perfectly clear that unless the jury found all three of these facts proved by the evidence, the verdict upon the issue as joined should have been for the defendant.

Even if it be conceded that the first fact is to be assumed as matter of law from what the defendant did—if, in other words, the defendant, having so acted, is conclusively held to have acted knowingly and willfully within the meaning of the law of estoppel *in pais* yet then the verdict manifestly could not be for the plaintiff unless the other two propositions of fact were proved and found by the jury, viz: 1st, that the representations were known to the other stockholders, and to the creditors interested in this suit; and 2d, that they took stock and trusted the company on the strength of that representation. The court should have so instructed the jury. The court, on the contrary, took the last two questions entirely away from the jury, and in substance instructed them that it was not necessary for the plaintiff to prove, or for the jury to find, either that the alleged representations were ever known to the other stockholders and creditors, or that they were influenced by them in taking stock or dealing with the company. That there was manifest error in this seems to us too clear for argument.

*Stiles Judson, Jr.*, for the appellee (plaintiff).

I. In a suit obviously instituted for the benefit of creditors and acting in that respect solely as their legal representative, the rights and limitations of this plaintiff should be equitably measured by those which attached to these creditors before the assignment was made. *Shipman* v. *Ætna Ins. Co.*, 29 Conn., 254; *Gaylor* v. *Harding*, 37 id., 518; *Calhoun* v. *Richardson*, 30 id., 228. The demurrer was properly overruled in any view of the case, for an estoppel *in pais* need not be pleaded at all, and whether any given facts will create an estoppel *in pais* cannot be determined except upon

the trial of the case, as a mixed question of law and fact. *Hawley* v. *Middlebrook*, 28 Conn., 527.

II. The charge to the jury was unexceptionable. The jury were instructed in effect that the plaintiff was not entitled to a verdict unless they found from the evidence that the defendant, representing this company as one of its executive officers, had held out to the world by his conduct, that it was legally organized and competent to transact business.

It is a reasonable presumption of fact, if the defendant held out to the public generally that he was directing the affairs of a legal corporation, and spread such declaration upon the public records, as prescribed by law, that these creditors who have dealt with the corporation during such period, were acting under the belief that they were dealing with a corporation that had legal capacity to contract, and against which legal proceedings might be invoked to enforce their just demands. This is not a violent presumption, but is consonant with reason and every-day experience. When all the outward semblance of a legal corporation is presented to the public, and the forms of law have been apparently complied with, and supplemented by continued assurances from the directors, of whom defendant was one, that such in fact is the case, how are such conditions susceptible of any other possible presumption than that parties dealing with them do so on the faith that it is what it professes to be? *Bushnell* v. *Church*, 15 Conn., 422; *Calhoun* v. *Richardson*, 30 id., 230.

In the sixth reason of appeal the defendant complains that the court charged the jury that " it is not necessary to hold the defendant estopped, that you should find that he willfully and premeditatedly held the company out to the world as a corporation "; and in that connection refused to charge the jury as requested by the defendant in his third request. This raises what we suppose from the controversy in the trial court is the chief point of contention in this appeal, viz : can an estoppel *in pais* be created where the words or conduct upon which the alleged estoppel is predicated are spoken or acted without evil design and in ignorance of their falsity? If defendant intentionally represents to the world

that the corporation is legally organized, intending that it should be dealt with as such, (and assuming that he believes it to be as represented,) he has " willfully " represented the fact to exist in the sense in which the word is so often employed by courts in treating of estoppels *in pais.* *Chase's Appeal from Probate*, 57 Conn., 236. The term " willfully " is synonymous with the term " designedly " or " intentionally," when used in defining an estoppel. *Pickard* v. *Sears*, 6 Ad. & E. 469 ; *Freeman* v. *Cooke*, 2 Exch., 654 ; *Howard* v. *Hudson*, 2 El. & B., 1 ; *Calhoun* v. *Richardson*, 30 Conn., 219 ; Bigelow on Estoppel, 612 ; *Cornish* v. *Abbington*, 4 Hurl. & N., 549 ; *Tiffany* v. *Anderson*, 55 Iowa, 406 ; *Dodge* v. *Pope*, 93 Ind. 481 ; 7 Amer. & Eng. Ency. of Law, p. 16 ; Bigelow on Estoppel, 607 ; Morawetz on Pri. Corp., §§ 131, 134, 135 ; *East Pascogoula Hotel Co.* v. *West*, 16 La. An., 545 ; Morawetz on Pri. Corp., § 375 ; *McCarthy* v. *Lavasche*, 89 Ill., 273 ; *Danbury & Nor. R. R. Co.* v. *Wilson*, 22 Conn., 450 ; *Lane* v. *Brainard*, 30 id., 577 ; *West Winsted Savings Bank* v. *Ford*, 27 id., 282 ; *Preston* v. *Mann*, 25 id., 127 ; *Raley* v. *Williams*, 73 Mo., 310 ; *Payson* v. *Withers*, 5 Biss. C. C., 271 ; *Horn* v. *Cole*, 51 N. H., 287 ; *Chase's Appeal*, 57 Conn., 263 ; *Ainslie* v. *Medlycott*, 9 Ves., 13 ; *Danforth* v. *Adams*, 29 Conn., 110 ; *Litchfield Bank* v. *Church*, 29 id., 150 ; *Ridgefield & N. Y. R. R. Co.* v. *Reynolds*, 46 id., 379 ; *Swartout* v. *Michigan R. R. Co.*, 24 Mich., 393.

" Where to the public, a company has all the external indicia of being a corporation and legally entitled to exercise the right and franchise it assumes, a person voluntarily taking stock in such company is not in a position when sued for the balance due for such stock for the benefit of creditors of the company, to deny the authority of the company to issue such stock or his liability thereunder." *Upton* v. *Hansburg*, 3 Biss. C. C., 417. See also Gluck & Beeker on Receivers of Corp., 152; Bigelow on Estoppel, 529 ; *Clark* v. *Thomas*, 34 Ohio St., 47 ; *Voorhees* v. *Receivers*, 19 Ohio, 463 ; *Ruggles* v. *Brock*, 6 How., 165 ; *Hasselman* v. *U. S. Mortgage Co.*, 97 Ind., 367 ; *Smelsen* v. *Turnpike Co.*, 82 id., 419 ; *Chubb* v. *Upton*, 95 U. S., 665 ; *Ogilvie* v. *Knox Ins.*

*Co.*, 22 How., 380 ; *Cayuga Lake R. R. Co.* v. *Kyle*, 64 N. Y., 186 ; *Eaton* v. *Aspinwall*, 19 id., 121 ; *Aspinwall* v. *Sacchi*, 57 id., 338 ; *Phœnix Warehousing Co.* v. *Badger*, 67 id., 298 ; *Kansas City Hotel Co.* v. *Hunt*, 67 Mo., 28 ; *Raley* v. *Williams*, 73 id., 310 ; *Atty. Gen.* v. *Simonton*, 78 N. Car., 62 ; *N. H. R. R. Co.* v. *Johnson*, 36 N. H., 406 ; *Miller's Appeal*, 84 Pa. St., 395.

BALDWIN, J. The demurrer to the second reply was properly overruled. The plaintiff sues as trustee in insolvency of a joint stock corporation, upon an assessment which it has called in upon the defendant's stock, and the only answer is *nul tiel corporation*. The second reply is that, however this may be, the defendant is estopped from making such a defense, because the debts, whose existence have made the company insolvent, are due to creditors who trusted it, as a corporation, because they were led to believe that it was such, by the acts of the defendant, in promoting its organization, publishing its articles of association, acting as a director and as its president, and contracting in its name and behalf these very liabilities.

It is claimed that these averments were not sufficient, because no bad faith, willful wrong, or gross carelessness is charged. No such charges were necessary. The plaintiff represents the rights of the creditors of an insolvent company, who contracted with it as being a corporation. Whatever rights they formerly had against those who were its members, he now has. They were led to believe in the existence of such a corporation by the acts of the defendant, as a promoter, stockholder, director, and president of the company, which are set out in the reply. It was natural that such acts should induce that belief. He had means of knowledge as to the manner in which the company was organized, which were not possessed by the public in general. Had he in fact known that its organization was so defective that the corporation, in whose name he was contracting, had no existence, or was incapable of transacting business, his acts would have been no more prejudicial to

the other contracting parties. It is not his intent, so much as the result of his conduct, which determines his liability.

The modern estoppel *in pais* is of equitable origin, though of equal application in courts of law. It is much more than a rule of evidence. It establishes rights: it determines remedies. An equitable estoppel does not so much shut out the truth as let in the truth, and the whole truth. Its office is not to support some strict rule of law, but to show what equity and good conscience require, under the particular circumstances of the case, irrespective of what might otherwise be the legal rights of the parties. The key to its application is not infrequently to be found in the rule that in matters of trust and confidence, when one of two innocent persons must suffer, in consequence of the acts of one of them, the loss must generally be borne by him who thus occasioned it. *Horn* v. *Cole*, 51 N. H., 287, 12 Am. Rep. 111; *Stevens* v. *Dennett*, ibid., 324, 330; 2 Pomeroy's Eq. Juris., § 802.

This rule clearly governs the case at bar. It is true that it does not extend to acts or representations not naturally calculated to mislead, and on which others had no right to rely. *Danforth* v. *Adams*, 29 Conn., 107. But those of the defendant were addressed to the public and to the parties injured. They came from one who was in a position to know what he affirmed. They gained credit to an organization in which he was interested. The company was a *de facto* corporation. Its creditors, who contracted with it as a corporation, could not hold the individuals who had associated to form it personally liable as co-partners, for with them no contract had been made. 2 Morawetz on Pri. Corp. § 748. The defendant was thus shielded from partnership liability by his representations as to its corporate character, and on these representations those with whom he dealt as one of its officers had a right to rely. *Northrop* v. *Bushnell*, 38 Conn., 498, 511; *West Winsted Savings Bank* v. *Ford*, 27 id., 282, 289.

The publication in a newspaper, which the statute requires, of the articles of association under which a joint stock cor-

poration is to be organized, is designed to inform the public, among other things, of the amount of the capital stock which has been subscribed, and of the names of those who have agreed to contribute it. Had the Bridgeport Vitrified Pipe Company been a corporation *de jure*, the subscriptions to its stock which the defendant caused to be published, upon its organization would, so far as they remained unpaid, have constituted, when it was adjudged to be an insolvent debtor by the Court of Probate, a trust fund, to be carefully secured and administered, so far as might be necessary, for the benefit of its creditors. *Crandall* v. *Lincoln*, 52 Conn., 73, 95; *Hollins* v. *Brierfield Coal & Iron Co.*, 150 U. S., 371. That, through the failure of one of the subscribers to pay in the twenty per cent in cash, the company remained only a corporation *de facto*, as respects its capacity to transact business, did not vary the equitable obligation of other subscribers who, whether in good faith or bad faith, proceeded to treat it as a legal corporation, assumed its management as such, and dealt with third parties on that footing.

Upon the trial to the jury on the issues of fact closed after the demurrer was overruled, the plaintiff offered evidence tending to prove the principal averments of the reply, and also that the defendant, as one of a majority of the directors, made a certificate under oath, as required by General Statutes, § 1948, and had it duly filed in the proper offices, for record, which stated, among other things, that the amount of capital stock actually paid for in cash was $12,000, being twenty per cent thereof; and that he was one of the stockholders who voted to make the assignment in insolvency, under which the plaintiff received his appointment. The defendant offered evidence to show that while he had voted as a director to have certain stock, on which the twenty per cent had never been in fact paid, except by a worthless check, transferred to the company, on account of the failure or inability of the subscriber to make such payment, and while no payment was ever made on this stock, yet he acted in that, and in all other matters affecting the business of the company, in entire good faith, and in the honest belief that

it was a duly organized corporation and competent to transact business.

At the defendant's request, the court instructed the jury that they must return a verdict in his favor, unless he was estopped from denying that the corporation had been legally organized. The following instructions were asked by the defendant, and refused:—

" Third. That to constitute such an estoppel, the plaintiff must clearly prove by a preponderance of evidence, and the jury must find that the defendant, by his words or conduct, willfully caused other persons to believe that the said corporation had been *in fact* legally organized, and that said other persons, by reason of such conduct of the defendant and by reason of such belief, subscribed for stock of said company, or gave credit to said company by reason of which said company became and still is indebted to them, and further that said persons will suffer pecuniary loss, in case the present action is decided in favor of the defendant.

" Fourth. There is no estoppel in this case, and the jury must find for the defendant on that point, unless all the said facts so requisite to constitute an estoppel, are clearly established. It is necessary that the jury should find not only that the defendant in fact represented that said corporation had been legally established, but that he did so knowingly and willfully. If he was himself deceived and mistaken in that respect, and made such representations in the mistaken belief that the corporation had been legally organized in good faith, and with no intent to deceive or defraud, then there is no estoppel, nor is there any estoppel, unless the defendant's representations, if they were made at all, are shown to have been made to the very persons whom it is claimed would now be losers by a verdict for the defendant in this case. The claim is that these representations were made to the other stockholders and to the creditors of the company. To sustain this claim, it must appear that the defendant represented that the company had been legally organized, to such other stockholders and creditors ; that this representation actually came to the knowledge of such

stockholders and creditors; nor would that be sufficient unless it further appeared that such stockholders and creditors, in their dealings with the company, relied upon and were influenced by such representations of the defendant and not upon other grounds, and that they would not in fact have taken stock in the company, or allowed the company to become indebted to them, had it not been for such representations made by the defendant; and if all the said points should be clearly established, still there would be no estoppel, unless it further appears that such other persons would be losers by a verdict for the defendant in this case."

The court, as to the points thus presented, charged the jury that it was not necessary, to found an estoppel, that they should find that the defendant willfully held the company out as a corporation; but, on the contrary, that the course of conduct which the plaintiff claimed to have proved would be sufficient to support his action, although the defendant acted in entire good faith, supposing that the corporation was legally organized, whether with or without actual knowledge of the law as to the effect of a failure to pay in twenty per cent in cash upon the capital stock; and that this being a proceeding for the benefit of creditors, to collect unpaid installments of stock, if they should "find that the company in fact had held itself out to be a legal corporation and began and carried on the business for which it was organized, and contracted debts with third parties as a corporation, and also find that the defendant as a stockholder attended the meetings of the company during this time and accepted the office of director and president of the company, and acted as such officer, and attended all the directors' meetings while he held these offices, and took part in the direction and management of the corporation while it was conducting that business, then by law he is estopped to deny that the corporation was a legal corporation, and your verdict should be for the plaintiff."

The defendant complains that the charge, thus given, treated as immaterial the question whether his acts and

representations were ever known to or relied on by the creditors represented by the plaintiff.

It is true that a trustee in insolvency represents no creditors but those who are such when the proceedings in insolvency are commenced. But all the creditors of the Bridgeport Vitrified Pipe Company who contracted with it as a corporation, presumably did so because it was publicly held out as such by its officers and stockholders. The defendant, as one of these, caused its articles of association, containing his subscription to its stock, to be published in a newspaper, and subsequently executed its organization certificate, and had it recorded in the offices of the secretary of the State and town clerk. A copy of such an organization certificate, by General Statutes, § 1090, when certified by the secretary of the State under its seal, is *prima facie* evidence of the due formation, existence, and capacity of the corporation which it describes. This section was designed to relieve the corporation and all having dealings with it from the necessity of proving, in every case to which it might be a party, by the testimony of witnesses in court, that the conditions of incorporation had been complied with. The certificate of the recording officer of the State, under its seal, excuses the production of the original document, and makes what would otherwise be hearsay, legal evidence as to all the world. The formalities of attestation serve only to verify the correctness of the copy and the fact of record. They lend no new weight to the statements in the original certificate of the directors. These remain the only real evidence of the fulfillment of the statutory conditions to which they refer, and are simply given, as evidence, a wider effect.

When the defendant joined in filing the organization certificate for record, he furnished to the public evidence under oath that the Bridgeport Vitrified Pipe Company was a corporation, capable of transacting business and contracting debts. *Wood* v. *Wiley Construction Co.*, 56 Conn., 87, 97. This certificate served the purpose of a special charter. Whoever afterwards dealt with the company as a corporation

was affected with notice of the contents of this certificate, as the statutory declaration, and, in effect, the legislative grant, of its corporate powers. It was recorded in a public office for the information of the public, and every person contracting with the company, as a corporation, is conclusively presumed to do so in view of the statements it contains.

One of these statements was that the required cash payment on the stock had been duly made, and the defendant cannot now be heard to deny it, as against any creditor, although he be one who became such without actual knowledge that such a statement had been made. The law gave notice that it must have been made by some one, if there was a corporation in existence to which credit could be given; and every creditor could safely rely, without inquiry, on the security afforded by any stock subscriptions mentioned in the certificate, which were made, or had been assumed, by one of the directors by whom it was executed.

In a case like this, where a trustee in insolvency is the sole plaintiff, he must recover, if at all, for the benefit of the estate, as a whole. He does not represent the special equities of any particular creditors, but the general equities of all. So far as this defendant is concerned, his responsibility to all rests upon the same ground. If any particular creditor were shown to have become such solely by reason of his knowledge of what the defendant had stated in the organization certificate, and of his reliance upon its truth, he would occupy no better position than others who had only constructive notice. In equity and good conscience, the signers of that certificate owe an equal obligation to every one who dealt with what they certified to be a legal corporation, with a capital so far paid in as to enable it to transact business, on the footing of its title to that name, and character.

Our statute provides (General Statutes, § 1944) that the signers of the articles of association for a joint stock corporation shall "become and remain" such a corporation, when the organization certificate is filed with the secretary of the State. The "first meeting" of the corporation, for effect-

ing an organization, at which directors are to be elected and by-laws may be adopted, is necessarily (§ 1946) held before the organization certificate can be prepared or filed. It is evident, therefore, that, for some purposes, the corporation is deemed to be in existence before (under § 1947) it is competent to " commence business."

It was not in dispute between the parties to this cause that the articles of association and organization certificate were sufficient in form, and that they were duly published and filed for record. The only issue tendered by the answer was upon the allegation that there was not and never had been any such corporation as that of which the plaintiff claimed to be trustee; but the estoppel set up in the reply had a broader reach, and was invoked to preclude the defendant from denying that the corporation ever existed, and that it was capable of contracting debts and making calls on stock subscriptions.

As the case was tried in the court below in this broader aspect, and as if turning on the right of the defendant to rely on the falsity of material statements in the organization certificate, we have treated it from the same point of view; although it may be that, in strictness, the answer was disproved by the admitted facts, which went to show that a corporation was organized, although it never became legally competent to commence business. If this be so, the plaintiff would no less have been entitled to a verdict on the issues closed.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.